**United States District Court**
For the Northern District of California

1
2
3
4
5

**NOT FOR CITATION**

6

7   UNITED STATES DISTRICT COURT

8   NORTHERN DISTRICT OF CALIFORNIA

9
10
11

DOLORES GALINDO,

12          Plaintiff,                          No. C 03-3671 PJH

13     v.                                       **ORDER GRANTING DEFENDANT'S**
                                                **MOTION FOR SUMMARY JUDGMENT**
14  AMERICAN AIRLINES,                          **IN PART AND DENYING IT IN PART**

15          Defendant.

16  _____/

17          The motion of defendant American Airlines ("American") for summary judgment came

18  on for hearing on June 8, 2005, before this court.  Plaintiff Dolores Galindo appeared by her

19  counsel Daniel Ray Bacon, and American appeared by its counsel Kenneth R. O'Brien.

20  Having read the parties' papers and carefully considered their arguments and the relevant

21  legal authority, and good cause appearing, the court hereby GRANTS the motion in part and

22  DENIES it in part as follows and for the reasons stated at the hearing.

23                              **INTRODUCTION**

24          Plaintiff Dolores Galindo, a Hispanic female, was employed by defendant American

25  Airlines ("American") from September 30, 1991, to June 30, 2003, in various capacities

26  relating to cargo operations.  At the time of the incidents that gave rise to the claims in this

27  case, she was a Cargo Claims Coordinator at San Francisco International Airport.  This

28  position is classified as a management position.

United States District Court

For the Northern District of California

1   Plaintiff claims that she was discriminated against based on her national origin by her

2   manager in Cargo Services, Michael Baum ("Baum").  Following a series of incidents in which

3   plaintiff was counseled by Baum about her public criticisms or reprimands of other employees

4   – in particular about plaintiff's criticisms of Cargo Agent Greta Betteo ("Betteo") – plaintiff

5   complained to American's Human Resources ("HR") department about the documentation of

6   the counseling.  After plaintiff made further negative comments about Betteo at a union

7   meeting in May 2001, Baum met with her in June 2001 and advised her that her behavior was

8   inappropriate.  Baum later received additional complaints about plaintiff's criticisms of Betteo

9   and other employees.

10   In December 2001, American conducted a review of I-9 forms[1] in preparation for an

11   FAA audit.  Plaintiff's I-9 form did not have a complete expiration date listed for her driver's

12   license.  Baum claims that he asked plaintiff to update her information, and that she provided

13   her passport for examination.  Her information was updated, and Baum never spoke to

14   plaintiff about it again.  Plaintiff's version is that Baum refused to accept plaintiff's driver's

15   license as identification, told her there was an unspecified problem with her social security

16   number, and demanded that she show proof of U.S. citizenship.  (However, in her deposition,

17   plaintiff testified that Baum stated that there were some "questions" regarding her social

18   security number, and that to avoid any complications or suspension of employment, she

19   needed to provide him with either a birth certificate or a passport as proof of citizenship.)

20   Plaintiff asserts that the driver's license should have been adequate to correct the I-9

21   deficiency, and that there was never any actual problem with her social security number.

22   Following this incident, plaintiff made an oral complaint to Laurie Cleary ("Cleary") in

23   the HR department.  She claims that after this complaint, Baum retaliated against her by

24

25   ───────────────

[1]   This is United States Immigration Form I-9, the "Employment Eligibility Verification

26   Form."  Under the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99-603, 100
Stat. 3359 (1986) (codified in scattered sections of 8 U.S.C.), and the Immigration Act of 1990,

27   ("1990 Act"), Pub.L. No. 101-649, 104 Stat. 4978 (codified at 8 U.S.C. § 1324c (1990)),  an
employer is required to attest under penalty of perjury in the Form I-9 that it has examined the

28   requisite documents showing the employee's identity and employment authorization and thereby
verified that its employee is not an unauthorized alien.

1  requiring her to perform job duties that were outside the scope of her job description, by

2  canceling training classes that she had set up for other employees, by falsely accusing her of

3  revealing confidential information from employee personnel files, and by falsely accusing her

4  of somehow involving the police in an investigation of union employees.

5       Plaintiff filed two additional complaints about Baum with HR, the first with Pat

6  Sakestaad ("Sakestaad"), and the second with Jim Obeker ("Obeker"). She claims that after

7  she filed the second of those two, in March 2002, Obeker told her there was nothing American

8  could do to stop Baum from harassing her. (However, the letter from Obeker, attached as an

9  exhibit to the Galindo Declaration, simply states that based on the information plaintiff had

10 provided and the results of the interviews conducted during the investigation, Obeker was

11 "unable to substantiate [plaintiff's] claim of harassment.") Baum states that he was unaware

12 that plaintiff had made any complaints about him to anyone in HR during the time she was

13 employed at American.

14      In January 2002, a supervisor sent an e-mail to members of management concerning

15 an incident involving a shipment of human remains. The e-mail was critical of the actions of

16 the agents who had claimed they did not know how to process such a shipment. American

17 claims that plaintiff shared this e-mail with non-management employees to whom it was not

18 addressed. Baum then apparently received a complaint from one of the non-managerial

19 employees, and asked plaintiff to explain her actions.

20      Baum met with plaintiff on February 8, 2002, to advise her he was concerned about her

21 performance. He asked plaintiff to choose between the alternatives of developing and

22 executing a plan to improve her performance, or exploring other employment positions within

23 American. Baum also documented these discussions. Baum asked plaintiff to think it over

24 and meet with him again on February 12, 2002, to advise him of her decision. Plaintiff

25 requested a change of meeting date, and so did not meet with Baum as scheduled. On

26 February 25, 2002, plaintiff met with a representative from HR to discuss the alternatives

27 Baum had given her. Plaintiff testified in her deposition that she decided, no later than

28 February 27, 2002, that she was going to take a medical leave of absence immediately after

United States District Court

For the Northern District of California

1    she met with Baum.

2       Plaintiff finally met with Baum on March 4, 2002.  At that meeting, she read Baum a

3    document requesting that any criticism of her be expunged from her file, and asked that Baum

4    be required to note in writing assigned tasks outside her regular assigned job duties.

5    According to plaintiff, Baum then shared some of his notes concerning his observations about

6    her job performance.  Plaintiff claims that she became so upset she "couldn't sit there any

7    longer," and left the workplace.  She never responded to Baum's suggestion that she either

8    formulate an improvement plan or seek employment elsewhere within American.

9       On March 4, 2002, plaintiff took a medical leave of absence (stress leave).  She was

10    never cleared by her health care providers for a return to work.  After she stopped working, her

11    job responsibilities were divided up and reassigned to other employees.  American claims

12    that as a result of financial losses following the events of September 11, 2001, it reduced

13    management and non-management personnel in all departments, including Cargo.  The

14    number of management positions was reduced in 2001, and again in 2002.

15       Plaintiff filed a charge of discrimination with the California Department of Fair

16    Employment and Housing on April 9, 2002, alleging race, sex, and age discrimination.  She

17    filed a charge of discrimination with the Equal Employment Opportunity Commission on May

18    2, 2002, alleging discrimination on the basis of national origin, and retaliation.   On April 30,

19    2003, the EEOC issued plaintiff a notice of closure of her case, and a right-to-sue letter.

20    Plaintiff received the right-to-sue letter on May 19, 2003.

21       In 2003, the Cargo Division ordered a reduction in force.  According to Baum, the

22    Cargo managers were directed to evaluate their employees based on their "criticality" and

23    directed to select the least critical positions and employees for inclusion in the reduction in

24    force.  On June 30, 2003, American (through Baum) notified plaintiff that she was being laid

25    off as part of a reduction in force.

26       Baum states that he selected plaintiff's position to eliminate because plaintiff had been

27    absent from the workplace for over 15 months, and her duties had been assumed by other

28    personnel.  When Baum eliminated plaintiff's position, she was the only member of

United States District Court

For the Northern District of California

1   management who was not working, and he claims he eliminated plaintiff's position solely

2   because it was not critical.  Baum states that 15 managers were working in SFO Cargo in

3   June 2000, and that there are only 7 such positions at the present time.

4        Plaintiff filed the complaint in this action on August 6, 2003, and filed the first amended

5   complaint ("FAC") pursuant to stipulation on December 20, 2003.  In the FAC, plaintiff alleges

6   three causes of action – discrimination on the basis of national origin, in violation of Title VII;

7   retaliation (hostile work environment), in violation of Title VII; and retaliation (termination of

8   employment), in violation of Title VII.[2]  American now seeks summary judgment on all three

9   causes of action.

10                                    **DISCUSSION**

11  A.    Legal Standard

12       Summary judgment is appropriate when there is no genuine issue as to material facts

13  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Material

14  facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

15  U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient

16  evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

17       A party seeking summary judgment bears the initial burden of informing the court of the

18  basis for its motion, and of identifying those portions of the pleadings and discovery

19  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v.

20  Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at

21  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

22  the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial,

23  the moving party can prevail merely by pointing out to the district court that there is an absence

24  of evidence to support the nonmoving party's case.  Id.

25       Once the moving party meets its initial burden, the nonmoving party must go beyond the

26  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is

27  _____

28       [2]  The FAC also alleged a fourth cause of action for wrongful termination in violation of
     public policy, but plaintiff dismissed that claim with prejudice.

1  a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 250. "To show the

2  existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative

3  evidence tending to support the complaint." <u>Smolen v. Deloitte, Haskins & Sells</u>, 921 F.2d

4  959, 963 (9th Cir. 1990) (quotations omitted). The court must view the evidence in the light

5  most favorable to the non-moving party. <u>United States v. City of Tacoma</u>, 332 F.3d 574, 578

6  (9th Cir. 2003). The court must not weigh the evidence or determine the truth of the matter, but

7  only determine whether there is a genuine issue for trial. <u>Balint v. Carson City</u>, 180 F.3d 1047,

8  1054 (9th Cir. 1999).

9       Deference to the non-moving party has some limits. Thus, a plaintiff cannot rest on the

10  allegations in her pleadings to overcome a motion for summary judgment. <u>Brinson v. Linda</u>

11  <u>Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995); <u>Ghebreselassie v. Coleman Sec.</u>

12  <u>Serv.</u>, 829 F.2d 892, 898 (9th Cir. 1987). Self-serving affidavits will not establish a genuine

13  issue of material fact if they fail to state facts based on personal knowledge or are too

14  conclusory. <u>Rodriguez v. Airborne Express</u>, 265 F.3d 890, 902 (9th Cir. 2001). Regardless

15  of whether plaintiff or defendant is the moving party, each party must "establish the existence

16  of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial."

17  <u>Celotex</u>, 477 U.S. at 322.

18  B.    Defendant's Motion for Summary Judgment

19       American now seeks summary judgment on the three causes of action alleged in the

20  FAC.

21       1.    National origin discrimination[3]

22       American argues that there is no triable issue of fact with regard to the cause of action

23  for national origin discrimination, based on plaintiff's assertion that the only basis for this claim

24  is that she was asked by Baum to provide additional information to update her I-9 form on file

25  with American.

26  _____

27       [3] Plaintiff's counsel clarified at the hearing that plaintiff is proceeding under a theory of
disparate treatment only, not under theories of both disparate treatment and hostile work
28  environment, and that she is asserting national origin discrimination only, not discrimination based
on race, gender, or age.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff alleging

2  disparate treatment under Title VII must first establish a prima facie case of discrimination.  Id.

3  at 802.  Specifically, the plaintiff must show that (1) she belongs to a protected class;  (2) she

4  was qualified for the position; (3) she was subject to an adverse employment action; and (4)

5  similarly situated individuals outside her protected class were treated more favorably.  Id.

6    The plaintiff in an employment discrimination action need produce very little evidence in

7  order to overcome an employer's motion for summary judgment.  Warren v. City of Carlsbad,

8  58 F.3d 439, 443 (9th Cir. 1995).  This is because "the ultimate question is one that can only

9  be resolved through a searching inquiry – one that is most appropriately conducted by a

10  factfinder, upon a full record."  Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir.

11  1996) (citations and internal quotation marks omitted).

12    Once the plaintiff has established a prima facie case, the burden of production, but not

13  persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason

14  for the challenged action.  McDonnell-Douglas, 411 U.S. at 802.  If the employer does so, the

15  plaintiff must show that the articulated reason is pretextual "either directly by persuading the

16  court that a discriminatory reason more likely motivated the employer or indirectly by showing

17  that the employer's proffered explanation is unworthy of credence."  Texas Dep't of Community

18  Affairs v. Burdine, 450 U.S. 248, 256 (1981).

19    In the present case, neither side specifically discusses the elements of the prima facie

20  case, although counsel for American stated at the hearing that American did not intend to

21  concede that plaintiff had established a prima facie case.  Instead, American primarily argues

22  that it had a legitimate business reason for the request that plaintiff update her employment

23  information.  American notes that plaintiff testified in her deposition that her sole basis for

24  asserting national origin discrimination was that she was asked to provide additional

25  documentation to update her I-9 information.  American provides evidence showing that this

26  request was made as part of an FAA audit of all American employees following the

27  September 11 attacks; that plaintiff's I-9 form on file with American was incomplete because it

28

United States District Court

For the Northern District of California

1  failed to list the expiration date of her "List B" document;[4] that Baum requested this

2  information of 50 employees of all races in his group (including plaintiff); and that plaintiff

3  admits that once she provided the information, Baum never mentioned the matter again.

4  American contends that plaintiff cannot now argue something that contradicts her deposition

5  testimony.

6  　　　American argues in addition that plaintiff has provided no evidence to demonstrate that

7  non-Hispanic employees who engaged in similar conduct were treated differently with regard

8  to the I-9 information, or that Baum counseled plaintiff because she was Hispanic rather than

9  because of her work performance problems.  With regard to plaintiff's claim that another

10  employee, Sandra Rodas, also experienced problems with Baum in connection with the

11  request for I-9 information, American asserts that Rodas' situation was different from

12  plaintiff's, in that Rodas was a non-citizen with an expired alien registration card, and whose

13  I-9 also contained an incomplete social security number.

14  　　　In opposition, plaintiff simply asserts that "the driver's license should have been

15  perfectly adequate to correct the I-9 deficiency."  She seems to be arguing that Baum's

16  request for a passport or a birth certification was in itself an act of national origin

17  discrimination.

18  　　　The court finds that the motion must be GRANTED.  Plaintiff has provided no evidence

19  to show the existence of a triable issue with regard to the claim of national origin

20  discrimination.  She testified in her deposition that Baum never referred to her in any way

21  concerning her Hispanic origin, and that he never posted any cartoons, posters, or graffiti

22  containing any comment on her national origin.  She also testified that no member of

23  _____

24  　　　[4]  Section 1 of Form I-9, entitled "Employee Information and Verification," requires the
applicant to attest to his work eligibility.  Section 2 of the form, entitled "Employer Review and

25  Verification," requires the employer to examine an applicant's documents and certify that the
documents appear to be genuine and that the individual is eligible to work in the United States.

26  The employee may present one document from List A or one document from each of Lists B and
C.  The documents on List A, such as an alien registration card (green card) or a U.S. Passport,

27  establish both identity and work eligibility.  The documents on List B, such as a driver's license,
establish identity but not eligibility to work.  The documents on List C, such as a social security

28  card, establish eligibility to work but not identity.  Robison Fruit Ranch, Inc. v. United States, 147
F.3d 798, 799-800 (9th Cir. 1998).

United States District Court

For the Northern District of California

American's management made any such comments or engaged in any such behavior, and has stated that the sole basis for her claim was the request by Baum that she provide a passport or birth certificate for the I-9 information update.  Moreover, she has identified no "adverse employment action," as part of her prima facie case.  American, on the other hand, has provided undisputed evidence that it had a legitimate business reason for requesting the I-9 information update, while plaintiff has provided no evidence showing that American's explanation is unworthy of credence.

      2.      Retaliation during the course of employment

American argues that summary judgment should be granted as to the second cause of action for retaliation that occurred prior to the leave of absence, which commenced on March 4, 2002.  In order to make out a prima facie case of retaliation, a plaintiff must show 1) that she engaged in a protected activity, 2) that she suffered an adverse employment action, and 3) that there was some causal link between the two.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2004).  If plaintiff succeeds in making a prima facie showing, the burden shifts to the defendant employer to present a legitimate reason for the alleged adverse employment action.  Id. at 1066.  Once the defendant has articulated a legitimate business reason, the plaintiff can prevail only if she provides evidence showing that the proffered explanation is pretextual.  Id.  Absent such a showing, summary judgment is appropriate.  Id. The evidence of pretext "must be specific and substantial in order to survive summary judgment."  Brown v. City of Tucson, 336 F.3d 1181, 1188 (9th Cir. 2003).

American contends that it is undisputed that when plaintiff complained to HR personnel Cleary and Sakestaad, she complained about the coaching and counseling she had received in connection with her workplace friction with Betteo.  Plaintiff testified in her deposition that her complaint to Cleary related only to what she described as experiencing "a great deal of resistance from Ms. Greta Betteo," and stated that she never heard back from Cleary.  She testified that her complaint to Sakestaad was about the counseling documentation concerning the friction between herself and Betteo.  She stated that in response, Sakestaad advised that she was upholding the counseling documentation, and also reminded plaintiff that both plaintiff

United States District Court

For the Northern District of California

1  and Betteo had made a commitment to cease discussions of the conflict with other parties

2  and "only remark to management of issues regarding the other employee."[5]

3        American argues that the complaints plaintiff made to Cleary and Sakestaad cannot

4  provide the basis for a cause of action for retaliation because they were not "protected acts."

5  Title VII protects two types of conduct from retaliation – opposition to practices prohibited by

6  Title VII, and participation in EEOC proceedings.  American contends that plaintiff did not

7  engage in either type of activity when she complained to Cleary or Sakestaad.  Her

8  complaints were not about discrimination, but about the friction that existed between herself

9  and Betteo, and the counseling she had received from Baum.  American also reiterates that

10  plaintiff cannot show a causal connection between her activities and the conduct engaged in

11  by Baum because there is no evidence that Baum was aware of plaintiff's complaints.

12        In opposition, plaintiff contends that the complaint to Cleary was a complaint of Baum's

13  "discriminatory treatment."  The remainder of her opposition consists of a listing of  the

14  retaliatory actions that Baum allegedly took against plaintiff, including asking her to perform

15  work that was not in her job description.  However, she does not address the substance of

16  American's motion as to this cause of action.

17        In reply, American asserts that plaintiff provides no evidence of retaliatory conduct

18  taken on account of plaintiff's having engaged in a protected activity.  American also contends

19  that plaintiff has once again contradicted her deposition testimony – noting that she stated in

20  her deposition that she did not have any problems with being asked to do additional work.

21  American also contends that as a member of management, plaintiff was expected to be

22  flexible and capable of adapting to change.  Moreover, her job description specifically stated

23  that it was not an all-inclusive list of duties.  American asserts that plaintiff has provided no

24  _____

25      [5] Plaintiff admits to having had at least 14 meetings with managers regarding the conflict
with Betteo.  She conceded in her deposition that despite having been counseled not to discuss

26  the conflict with Betteo with third (non-management) parties, she nonetheless made negative
comments about Betteo at a May 2001 meeting with union employees.  It was her comments about

27  that meeting that led Baum to meet with her in June 2001.  At that meeting he told her that her
behavior was unacceptable, and that it was inappropriate for her to criticize Betteo in front of non-

28  management personnel.  Subsequently, Baum received another complaint from Betteo that
plaintiff had been "trashing" her to another employee.

United States District Court
For the Northern District of California

1  evidence that Baum had any discriminatory or retaliatory motive for counseling her or for

2  asking her to perform certain jobs.

3       The court finds that the motion must be GRANTED.  Plaintiff has not established a

4  prima facie case of retaliation during the course of employment, as she has not shown that

5  she engaged in activity protected by Title VII.  Title VII provides that "[i]t shall be an unlawful

6  employment practice for an employer to discriminate against any of his employees or

7  applicants for employment . . . because he has opposed any practice made an unlawful

8  employment practice by this subchapter, or because he has made a charge, testified,

9  assisted, or participated in any manner in an investigation, proceeding, or hearing under this

10  subchapter."  43 U.S.C. § 2000e-3(a).

11       The complaints about the conflict with Betteo are not protected activity, and plaintiff

12  provides no evidence to show that Baum was engaging an unlawful employment practice

13  when he counseled her about the conflict, or even that she believed that he was engaging in

14  an unlawful employment practice.  See Trent v. Valley Elec. Ass'n, 41 F.3d 524, 526 (9th Cir.

15  1994) ("To establish the first element of a prima facie case, [plaintiff] must only show that [she]

16  had a reasonable belief that the employment practice [she] protested was prohibited under

17  Title VII."); see also Ashkin v. Time Warner Cable Corp., 52 F.3d 140, 144 (7th Cir. 1995)

18  (finding that complaints about workplace conflicts "arose solely out of a non-sexual personality

19  clash between two aggressive individuals" and did not represent a situation in which the

20  plaintiff raised the Title VII issue in the complaint to the defendant); Coutu v. Martin Co. Bd. of

21  Co. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that "unfair treatment, absent

22  discrimination based on race, sex, or national origin, is not an unlawful employment practice

23  under Title VII").

24       There is no evidence that plaintiff complained about anything that can be considered an

25  unlawful employment practice or that she reasonably believed was an unlawful employment

26  practice.  Moreover, plaintiff provides no evidence to show that Baum was aware of her

27  complaints, and therefore cannot show causation.

28

United States District Court

For the Northern District of California

3.      Retaliation (unlawful termination)

In the third cause of action, plaintiff asserts that Baum's decision to lay her off under the reduction in force in June 2003 was in retaliation for her having filed the EEOC charge in May 2002.  American claims that this claim fails because, while plaintiff may be able to establish a prima facie case, she cannot show that American's stated reason for the elimination of her position was pretextual.

American asserts that the evidence shows that it had been reducing its workforce extensively, both before and after September 11, 2001, and that when plaintiff's position was eliminated in June 2003, the action was part of a system-wide reduction in force that eliminated a total of 30 Cargo positions.  Baum states in his declaration that at that point, plaintiff had been off work for 15 months, her responsibilities had been assumed by other employees, she had never been cleared to return to work, and her position had never been reinstated or replaced.

In opposition, plaintiff contends that American has put forth two different statements of the reason for plaintiff's termination.  Baum stated in his declaration that he selected plaintiff for layoff because she was not working at the time, and because her duties were being performed by other personnel, and that this was "the sole reason" he eliminated plaintiff's position.  At the same time, however, in a document authored at time of the termination, entitled "Selection Decision for Galindo, Dolores," Baum stated (in response to request for comments re "why this person is less critical") that plaintiff "doesn't have the skills necessary to act as CSM or lead the employees.  She is limited to loss and damage coordinator function.  The employee can't add capacity to other tasks or multi-task.  She is the least critical person in the SFO Cargo Services organization because everyone is able to multi-task."  Plaintiff notes that nowhere in this explanation does Baum say that she was off work or that other employees were performing her functions.  Plaintiff claims that based on this inconsistency in the proffered reason for the  termination, a fact finder could conclude that the alleged reason was pretextual.

Plaintiff also contends that American failed to follow its own policies regarding layoffs.

12

United States District Court
For the Northern District of California

1   Kerry Ackerman, a Senior Representative for H.R. for American testified in her deposition that

2   the employees were to be laid off based on their "criticality."  In plaintiff's case, Baum was the

3   sole decisionmaker in deciding who would be laid off, yet he testified in his deposition that he

4   had never done formal evaluations of his staff even though they were supposed to be

5   reviewed each year.  He also testified that he did not consult any personnel records or CR-1s

6   (Counseling Records) when doing the rankings to determine which employees would be laid

7   off.  He claimed that he knew plaintiff could not perform other tasks he might assign, yet he

8   testified that he never assigned her any of the tasks in question, never spoke to her about her

9   alleged inability to "multi-task," and did not review her personnel file or other documents to

10   determine her prior training.  Plaintiff claims in her declaration that most of the tasks that

11   Baum claims she was unable to perform were assigned to particular employees who had

12   received training that had not been provided to her.  She also asserts that there is evidence

13   that other management employees not only could not multi-task, but also could not even

14   perform their basic job duties.

15         Finally, plaintiff claims that although American had a policy of allowing laid-off

16   employees an opportunity to seek other employment with the airline, Baum made an effort to

17   see that plaintiff was not allowed to return to the company.  He recommended that she not be

18   rehired to any management position, despite the fact that he had previously given her a

19   positive review, and despite the fact that she had received positive feedback from others.

20   Moreover, plaintiff was the only employee Baum terminated during the June 2003 lay-off, and

21   he testified that he, himself, was the person who determined the number of employees who

22   would be laid off.

23         American responds that Baum did not give contradictory reasons for terminating

24   plaintiff.  American claims that Baum followed the company's guidelines for management

25   reduction in force, which required that Baum evaluate the "criticality" of the employees in his

26   organization as compared to other employees.  He was instructed to evaluate each of his

27   employees considering their specialized skills, knowledge, flexibility, and work performance.

28   He states in his supplemental declaration that he considered the fact that no one had replaced

United States District Court

For the Northern District of California

1  plaintiff in her position for more than a year, and that her duties had been reassigned over that

2  period to other employees.  He believed plaintiff's position was the least critical because it

3  was no longer necessary. He claims that he evaluated the criticality of each of his employees

4  pursuant to the reduction in force guidelines, and entered his assessment of plaintiff based on

5  those guidelines – that her skills were limited and that she was unable to multi-task.

6        American notes that plaintiff admits that she did not have certain skills possessed by

7  the remaining CSMs.  For example, she concedes in her declaration that she had no

8  experience dealing with the environmental coordinator or the grounds security coordinator or

9  in building shift bids for fleet service clerks, agents, or mail employees; that she had no

10  experience in the mail operation; that she was not knowledgeable about facility maintenance

11  or auditing dangerous goods, or experienced in loss time or customer service manager

12  representative duties; that she did not have the experience to handle financial audits; that she

13  had no experience in managing head count or in handling reductions in force or recalls.

14        American also contends that plaintiff admits that there were complaints filed against

15  her by Betteo, and that she cannot dispute that other employees complained about her as well

16  (as stated by Baum in his declaration).  She was counseled by Baum for breaching

17  confidentiality and for the friction with Betteo, and was finally asked to choose between

18  correcting her performance and looking for work elsewhere in American.

19        Finally, American argues that plaintiff fails to establish any causal connection between

20  the filing of the EEOC charge in May 2002 and being laid off in June 2003, and reiterates that

21  there is clear evidence of a legitimate, non-discriminatory reason for the elimination of

22  plaintiff's position.

23        With regard to plaintiff's claim that American failed to follow its own procedures with

24  regard to reviewing all positions eliminated as a result of a reduction in force, American

25  asserts that Karry Ackerman testified at her deposition that American routinely conducts

26  reviews of reductions in force.  While Ackerman could not recall any specifics of plaintiff's

27  termination, American argues that her testimony does not support plaintiff's claim that

28  American failed in this instance to follow its own procedures.

United States District Court

For the Northern District of California

1   The court finds that the motion must be DENIED as to the third cause of action, and that

2   disputed issues of material fact preclude summary judgment.  While American has provided

3   evidence tending to show a legitimate non-discriminatory reason for plaintiff's termination –

4   the company was engaging in a reduction in force, plaintiff's position had not been filled, and

5   her job duties had been reassigned – plaintiff has pointed to evidence that raises a question

6   with regard to whether American's proffered reason is pretextual.

7   In particular, Baum provided what appears to be somewhat different reasons for

8   plaintiff's termination – stating in his declaration that the sole reason for her termination was

9   that she was not working at the time and her position had not been filled, and then stating at

10  the time of the reduction in force that plaintiff was selected for termination because she could

11  not multi-task.  In addition, while Baum claimed that plaintiff was less qualified that other

12  employees based on experience or abilities in particular areas, plaintiff provided evidence

13  that showed that she was not offered any training in those areas.

14  4.   Objections to evidence

15  Finally, American's objections to evidence are OVERRULED.  The objections are

16  directed primarily at statements in plaintiff's declaration and in the declarations of Sandra

17  Rodas and Andy Fresquez.  Because the court does not rely on any of this evidence, the court

18  need not consider whether it is admissible.

19

20  **IT IS SO ORDERED.**

21  Dated: July 8, 2005

22  _____
    PHYLLIS J. HAMILTON
23  United States District Judge

24

25

26

27

28